Our next case is 4-13-0880, People of the State of Illinois v. Gerald Wayne White. Attorney Luckman is here on behalf of the appellant. Attorney Brooks is here on behalf of the appellee. Mr. Luckman, are you ready to proceed? I am, Your Honor. All right, you may proceed. Once again, I'm Kerry Luckman. I'm here as counsel for Gerald Wayne White, the petitioner in this case. What we have is a petition for post-conviction relief. The civil remedy under, actually not post-conviction but for relief from judgment under Section 2-1401 of the Code of Civil Procedure applied in a criminal case. White was convicted in 2011 in a trial in October of two offenses, both arising on the same occasion. The first being delivery of a controlled substance, the second being a possession of a controlled substance. Very simply, factually, the delivery alleges a handover of heroin to a confidential source, an informant used by the government. It was what you would call the by-bus scenario where she's busted for something that day. That's Ms. Lindorfer, if you'll recall from the record. And then later the same day, the government agents, the local drug enforcement agents, will flip her, as they say, and use her to make a buy. White is met in front of his house by a white pickup truck, white in color, driven by a Michael Chad Boit man. Laura Lindorfer is in the passenger seat. White comes to the truck. White goes away from the truck. The truck goes back to the drop-off point where Boitnott drops off Ms. Lindorfer. She meets back up with the agents who placed her in the position to make the buy. Both Boitnott and White are, if you will, taken down at different locations in different vehicles later on as we get later into the afternoon. It's an early afternoon event. Why is this background so important? Well, I think what you find when you look at these cases is every case of this nature where it's a collateral attack on a judgment in a criminal case after a trial, and I think for that matter after a civil case tried, what you have is you've got to measure if there is this new thing, this thing that was unavailable at trial time, what impact it's going to have. And that, I think, was an important factor for the trial judge. So let me focus on that a minute. You'll note that there were three counts. The second count was the count of possession with intent to deliver a controlled substance. And that's the place where, from a legal standpoint, I have to acknowledge that our position, the petitioner's position, the criminal trial defendant's position, is in some ways the weakest because of Powell in the U.S. Supreme Court and the impact it then had on inconsistent verdict cases in Illinois law. Now, I reminded the Court of the essential background of the physical event and the takedown because what we have is a case in which there's a heroin delivery of some kind, perhaps, but Lindorfer winds up returning after the trip with Boitnat in Boitnat's truck, which is not searched by the police. Lindorfer has been, and I would say a cursory search when you look at the record, what the trial testimony was, given a cursory search by all male officers. There were no female officers on the detail. That's acknowledged in Shoemaker, kind of the case agent's testimony. She's allowed to go into her room in her home without any officers present and change into her work uniform, at least her former work. She had stolen from her employer $40 from Denny's, got fired, still had the uniform and the ruse, if you will, was that she was to meet at work, and that's actually where Boitnat picks her up, in the back area of the parking lot at the Denny's restaurant in Bloomington. Okay, so on the way, what Boitnat gets to in his testimony later will be very important. He's the witness who took the fifth at the trial. He's the witness who, it would be fair to say, White and his counsel might have hoped what he would testify to, because White knows his version of the events, but that's the witness who becomes unavailable, if you will, at his trial, can't use him. But the three counts get back to these foils, which contain heroin. When White is taken down, he's got a couple of things on him. He's got some cash that isn't the same as the buy money. Some of the buy money is there. He does indeed have some of the buy money. The bills do check out. There's no question of that on the evidence. Now, White's story, which is in the offer of proof at the evidentiary hearing on the 214-01 in that regard, explains how he got that, but as we look at this set of three charges, this inconsistent verdict issue and the relief sought on that aspect of it is if the court, as a matter of law, is able, and this is where we get to Powell and its adoption in Illinois, is able to say that count two, because of cases like Coleman that talk specifically about that logical thing as well as the legal thing, to deliver it, you've got to possess it with the intent to deliver it. During the trial, wasn't it argued by the state that that count related to the later stop by the police? He had two foils of heroin on him, and he was charged with possession and possession with intent to deliver, and the jury found him guilty of possession. Your Honor, it would be fair, I suppose, to suggest that. There is also a very specific argument made by the prosecutor. It's cited specifically in the brief. It's quoted where he says that the stuff on White is the same stuff. This is no coincidence. So I pose the question, if I may. The stuff on White is the same stuff. Isn't that saying it's heroin? I don't think the point he was making was heroin. He's drawing a connection between what Lindorfer shows up with, and, again, when we're talking about foils of heroin, it's a pretty generic thing. These don't, at least in the trial evidence, there's no distinctive markings. None appear on the exhibits. So what it appeared the prosecutor was saying to the jury is this is the same batch of material, therefore, this delivery to her, this all must be the same stuff. This is where I suggest the rub, if you will, the inconsistency with finding him guilty of the delivery. If on what was on his person, the foils that he had, when he's taken down, if, as the prosecutor argued to the jury, it's the same stuff, but the jury... find, which they did, that that was for his personal use, that he possessed it for his personal use. And let me follow along that line. As if to say, okay, he has a large batch, he delivers some and he keeps some, therefore, here's the distinction. That might be a reasonable explanation. I don't think that was what the prosecutor argued, and I think the way the jury instructions are presented, and those are included in the appendix to the brief, because on this issue the jury instructions become important. There is nothing to delineate. What seems to be evolving, and I guess I say this as a former prosecutor myself, there is a tendency to not be careful and to play slap, to use the pool player's term. I don't wish to be indelicate. But what you have is this, you get what seems to be an attempt to blur the lines or a carelessness in making clear your allegation and your proof. And when those things merge in that fashion, I think you get into this issue of where that gets problematic. There's no delineation in the instructions for the jury as to which they're talking about. So I suppose in a way that's left to argument, but then the argument seems to fall back on that same stuff aspect. Now again, as Your Honor suggested, would it be a rational inference that a jury could draw that would separate these two things? I think that might be a fair assertion, but let me throw this out. It's still that same stuff. And if he hadn't possessed it with intent to deliver it, how do we separate those things? So I guess that's one that, as I said, particularly given Powell and the Illinois adoption of it, we have this two sets of cases with inconsistent verdicts. We have the ones where it's two inconsistent guilties, typically a mental state issue in the homicide cases. That's where we see most of them. Then we have the other flavor, which is what we have here, which is the not guilty of the included. I suppose, and I throw this out just in candor to the Court, that on the inconsistent verdicts point, if one was careful about it, and it was really thought of in terms of an included offense, we would have seen a different 2601, the concluding instruction, than was given. We also would have seen different sets of verdict forms, wouldn't we? We'd have the three-verdict version where guilty of the greater, guilty of the included, and not guilty. So I suppose if it had been done with the degree of care that we might expect from an experienced trial judge, with the degree of care we'd expect from the parties, if they sought to delineate, it would have been there. If defense counsel didn't wake up to it, his failure, well, where that leaves us in a 21401 is very different than where it would leave us on an ineffective assistance issue. So that's the point, and that's the sum of the argument regarding the inconsistent verdicts. And I think it might be fair to suggest, as Justice Polk has, that if you can rationally delineate between the two, given the way it was presented to the jury on the instructions and the arguments, then I have to suggest, I have to confess, that I have a dead argument. And that's, again, if you can get there, because this case falls into that. If indeed it is the included, then we've got a not guilty of the included and a guilty of the greater, and therefore we're in that area that the Supreme Court has suggested. Inconsistent verdicts won't fly anymore because jurors do it out of lenity. Jurors do it, again, I would suggest, with no disrespect to the court, it's kind of an odd posture because there are so many areas where we take some really, if you'll pardon me, goofy things the jurors do and say, well, they were following the instruction. They follow the law. They're presumed to follow the law. That's why we don't invade their province, such as curative instructions. When we get those... Counsel, the instructions did refer to these separate counts, correct? They did, indeed. They did, indeed. The instruction regarding delivery referred to count one, which specifically said delivery to a confidential source, correct? Correct. That would seem to be pretty clear that the jury was finding your client guilty for delivery of the... In two foils of that delivery. ...to a confidential source. Right. Therefore, that leaves the other four packets that were found on his person.  And the instructions as to counts two and three would clearly seem to indicate that those refer to the four packets, not the two delivered to the confidential source. Hence, I don't really see your argument as to the jury could not discern which substances were in issue as to the three different counts. I understand your point, Justice Turner. My point on the instructions isn't that they were not there, that the set of three pairs, but rather that there is no delineation in the instructions. For example, by including wording, and this is a departure from the pattern, but you have to adjust to what your trial is with the pattern instruction, referring in the instruction to that which was found on Mr. White. If that was what they're referring to in count two, would it not have been the better practice and would it have not avoided this issue and preserved the integrity and separated the arguments, left the prosecutor with unavailability to play slot? If you delineate in the instruction, which one you're talking about? We often see that delineating among counts in cases. A classic example, the court probably gets too many of them, DUI cases, drug cases too, where you have multiple counts, certainly the homicide cases. There's so many flavors, but those come with a different form of instruction. So I guess that's the response that I suggest, and that's why I suggest the instructions are important as part of this mix. The result would be if the court has available this legal issue, and again, I'd suggest that as a gray area after Illinois adopted the Powell theory because we're in that category of the not and the guilty as opposed to the two guilties. But that would result in a vacation of the delivery conviction. When we get to the other issues, they relate to providing a new trial. That would be the available remedy. So what do we have, and this is why in part I started with the evidence. One of the issues in the case, and that the prosecutor made an enormous amount of traction, enormous amount of time both arguing and in terms of evidence, was these purported texts and phone call to White. Lindorfer testifies about it, and to a slightly different degree, Shoemaker gives a little different flavor as to what was in the text, what was in the voice call. But it's pretty much the same stuff. Both of them say the two things. And we have People's Exhibit 6 at the criminal trial. That's the phone. It's literally in White's hand, I guess, when they grab him and go to cuff him. When he's riding in this, I think it was a Blazer with some other people, when they stopped him, they followed him away from the location in front of his house. And the phone is seized. It's the last he ever sees of it. It's in police custody right up to trial time. And ironically, after all this is said about the phone, nobody turns it on. Nobody publishes it to the jury to show these texts. And the voice call from this known number are there. I'm not going to suggest there's a recording of the voice call. Obviously not. But we're all familiar enough, I think it's common knowledge, and there's testimony in the record in White's offer of proof at the 214-01 hearing in May of 2013 before Judge Castigan about, yeah, it would recognize this number as skinny. That was the nickname of Lindorfer's boyfriend who was a friend of his. And it would show. We'd see in the recent calls the call received. We'd be able to see the text. And he testified specifically, I did nothing to delete it. Was that all available at the time of trial? It was indeed. It's something that either the prosecution certainly, and most assuredly defense counsel, in going after it, should he have done it? Well, you know, it's easy to second guess. I like to think I would have gone after it, having spoken with Mr. White as his lawyer and learned in retrospect, but it's always tough to look over the shoulder, and I know that. But, yes, that would have been available. Maybe he was afraid of what he might find. That's certainly a possibility. I think we have to look at that in light of what White has maintained from day one as contained in the offer of proof. Remember the context in which White, I believe, shot himself in the foot, I think we can all say that, elects to not testify at trial. The trial judge has been proposed, and whether you call this a real Montgomery hearing or not, that's not an issue here. But it's part of the context of the trial, why White's not testifying. He doesn't testify because he's going to get hit with three drug convictions, the only three convictions the prosecutor proposes to use, the only three that are in the preceding decade. There's no weighing process, but he's terrified. It's fair, and he testifies to that. So in the end, he doesn't take the stand. White now is unavailable at trial because of, I don't want to say a bums rush, because I don't think that's respectful to the trial judge. But what happens in this hurry at trial, and I think we all know what it's like when you're in a jury trial, you're trying to keep things moving, you're trying to be organized and stay ahead of it, and what happens is White now takes his stand at trial. He's pled guilty. He's got a partial plea agreement because it really doesn't give him anything, but he's pled guilty. And his sentence, he keeps getting delayed. Part of it was his fault because he slips out of custody and he winds up dealing with a Peoria County case, but now he's in custody and it's mid-trial. White's just getting a ruling about whether the convictions will be used against him. Boyt Knott comes into the courtroom. I understand you're going to take the Fifth, and that's really as far as it goes. There is a little bit of detail. The transcript goes on for about two, two and a half pages. It's very short. And given the opportunity to ask the questions that counsel needs to ask, and again, that's a matter for another proceeding, obviously, because it's not really part of the 214-01 except in the state's answer, why the heck didn't he do it at trial? Why didn't he ask the questions then? And I can't explain why counsel didn't do it then. Maybe that related to his unpreparedness, which the record shows. Maybe it relates to other factors, not knowing that he needed to do that. I'm astonished that you would not do it because if you look at Boyt Knott's answers at the 214-01 hearing, they're not incriminating. Had that inquiry, and I'm not saying because I did it, it's the right one, and I see my time has expired, I'll just finish this thought. Had that inquiry been made, even in the maybe even ham-fisted way that I did it, in May of 2013, had that happened in October of 2011, you have a very different landscape in this trial, especially when you look at the circumstances. Thank you all. You're welcome. Thanks. Ms. Brooks? Hello. May it please the Court and counsel, my name is Allison Paige Brooks. I represent the people in this case. First issue that raises the inconsistency in verdicts, there's two types of inconsistencies, logical inconsistency and legal inconsistency. And in this case, they're not necessarily logically inconsistent because there are two separate items of heroin involved here, the foil packets that got delivered to the confidential source and the ones that were seized on defendant after his arrest. The state understands defendant's argument to be that there was a sloppy handling in the trial in which these packets were not really differentiated enough, so that it's arguable that under the rule that basically you have to, in order to deliver something, you had to have possessed it at the first instance. So their claim is that this could be considered like included offenses where possession of a controlled substance and possession with intent to deliver are included offenses of unlawful delivery of a controlled substance. But even if that were granted, and that's why the whole analysis doesn't really even have to be engaged in as to whether they're logically inconsistent. Even granted that they are legally inconsistent, if that were agreed with by the defense, the defense position is legal inconsistency entitles them to a new trial. But under the Powell rule adopted by the Supreme Court of Illinois and Jones, defendants can no longer challenge convictions on the sole basis that they are legally inconsistent with an acquittal, which is exactly what the defendant is trying to do here. Trying to say that the jury had a reasonable doubt of intent to deliver, so therefore that makes him unable to have been convicted of unlawfully delivering. So for that reason, this is not a case like Price cited in their opening brief where there is an inconsistency between guilty verdicts, which is still something that has to be remedied. But after Jones, the defense argument cannot be accepted. Moving on to the evidentiary rulings, which are reviewed by this court for abuse of discretion, the defendant does not cite any contrary authority to the rule that these sort of hearings under 214.01 should be limited to the evidence that relates to matters that are newly discovered and could not have been presented at the trial. So for that reason, both the defendant's own testimony, which he could have offered, he was legally entitled, he had a right to testify if he wanted to. And also People's Exhibit 6, the contents, electronic memory contents of People's Exhibit 6, the phone that police seized from him, were both available to be presented at trial. So for that reason, the trial court did not abuse its discretion and the defendant doesn't persuade that there is any contrary authority to show that those should have been admitted into evidence at the 214.01 hearing. The next argument is the trial court ruled on its 214.01 on two grounds. The defendant's argument in this opening brief only alleged one of those two grounds as being erroneous. So therefore, the defendant forfeits on appeal by failing to argue against the other ground that the trial court relied on. And that ground was that the defendant had waived the issue of claiming that Boytnot's testimony is newly discovered evidence. That is not challenged on appeal because the defendant didn't brief that argument. The trial court's reasoning was that the trial counsel, and this is not the attorney on appeal now, this is a different attorney, the trial counsel should have questioned Boytnot and then had an opportunity to determine what answers were incriminating. Because the defendant here admits that Boytnot's 214.01 testimony was not incriminating. So if this procedure had gone properly during trial, the trial court would have refused Boytnot's attempt to invoke the Fifth Amendment privilege and made him testify as to matters that are not incriminating to him. So when the trial court in the 214.01, I mean, judge reviewed after David and in his order questioned whether the trial court should have allowed Boytnot to assert the Fifth Amendment right. And the state wants to make the point here that Boytnot was not really a co-defendant. I understand this is a situation where Boytnot is sitting right here in front, I think as the defense says, with the heroin passing essentially right in front of his nose. So it's not like he's totally removed from this situation, but he was arrested after this delivery happens. The police arrest him later and pick him up on the basis of heroin packets, foils of heroin that were in his own truck. So he is not accountable or arrested for his involvement in the delivery from defendant to Lindorfer. So because he's not under the cases which say that a co-defendant, no amount of diligence can force that co-defendant to waive their privilege and testify if they don't want to. Boytnot's not a co-defendant. So here there was a situation where diligence, the trial counsel for the defendant who could have asked those questions when the trial court gave him an opportunity at trial, to ask those questions outside the jury's presence, and then the judge could have made the ruling on whether he should be allowed to invoke the privilege. Because he's not a co-defendant, privileges are not awarded to a witness merely on their say-so. It has to be a real danger of incrimination. Perhaps maybe Boytnot could have said something or established to the trial judge's satisfaction that yes, I'm in fact in a real danger of incriminating myself is what he could have possibly persuaded to the trial court. But because those questions were never asked, the trial court never had that opportunity to make that ruling in that manner. And because the defendant didn't brief this issue on appeal and challenge the trial court's ruling, then essentially he can't persuade that that ruling should be overturned. So with respect to the main issue of this appeal, essentially it's on the mirror. It's the issue. This court has determined whether trial court's ruling is manifestly erroneous. The trial court's second part of the ruling was whether the testimony is not conclusive enough that would probably change the result if a new trial is  Here the defense relies mostly on problems with the, quote, The fact that Boytnot's truck was not searched by police and Boytnot was the one who was transporting the Lindorfer, the confidential source, to the location of the buy. There was some surveillance, but it wasn't enough to like actually physically see the delivery. So there's only a person who would have actually witnessed the delivery were White, Lindorfer, and Boytnot. So the fact that Lindorfer was changed clothes and the fact that no female officer searched Lindorfer's person. So there's some problems with the controlled nature of the search. However, that doesn't mean that Lindorfer's word could not be accepted as true beyond a reasonable doubt. The main reasons why the judges disagreed with the idea that Boytnot's testimony, even if it were newly discovered, should be conclusive enough to warrant a new trial, there's three aspects to it. One is something that the defendant has sort of referred to here, but hasn't really directly challenged. The trial court's finding that the foils of heroin found in the defendant's coat pocket matched the foils of heroin that Lindorfer said that the defendant had delivered to her. Now, essentially, I haven't seen these foils myself. I'm not sure exactly how much of a, quote, match they are if they're not really, there's no markings or descriptions necessarily on them. That's something the trial court relied on in ruling on this petition. The defendant hasn't directly challenged that finding. But the two other main things, even more important main things, involve the prior statements to police. The defendant told police the money in his pocket, some of which was, of course, prerecorded, so therefore linked to the purchase, he said it came from a currency exchange that he got proceeds from a check that he received from a, quote, Bill Smith who lived on Bund Street, and he sold his car to him for $300. That doesn't mean that he's not telling police, yeah, I got $100 from Laura Lindorfer, but it was for something other than a heroin purchase. He's not saying that. So he's going to be impeached with that. The other thing is Boytnot was subject to impeachment as well, and the state supplemented the recording, the record with the recording, showing that he readily admitted to police that Boytnot bought something off a defendant and that she paid him $100 for his words dope. So essentially, Boytnot's not going to be believed when he says that, no, there's nothing delivered. Laura Lindorfer had it on her the whole time. That cannot be believed when he's got the recording telling police that, yes, Lindorfer bought $100 of dope off of a defendant. So for those reasons, the trial court's ruling about it not being, Boytnot's new testimony, new, was not conclusive enough to change the result of the trial. That was not manifestly erroneous. So for those reasons, the state requests this court to affirm the trial court's denial of the section 214-01 and entertain any questions. Thank you, Mr. Grossman. Any rebuttal? Thank you, Your Honor. Please, the court, counsel.  But I do indeed raise the issue of Boytnot and is this newly discovered. It's actually at the bottom of page, I'm going to put my specs on 36. There is so much emphasis in 214-01 discussions, in criminal cases particularly, but also on the civil side where it's attacking a civil judgment. This phrase, newly discovered, I have suggested in the brief and I suggest again that the trial court's understanding of that is too narrow. Here, there's two ways to view Boytnot's testimony as newly discovered or available. There is the unreachable. It's rendered unreachable in this instance because counsel stands in the way. No, you're not going to get a talk. He takes the fifth and it's as if it was done on TV. It's like in a TV movie or something. He's taking the fifth. It's not the proper manner in exercising the Fifth Amendment privilege despite the experience of the trial judge, but he did throw it to the lawyers and defense counsel should have jumped all over it. He should have asked those questions. I certainly agree with counsel on that. I mentioned that before. But Boytnot's testimony was rendered unreachable in this trial. He could not get it. Boytnot might as well have been on the moon in the circumstance with the determination that he was protected by a privilege. And the interesting thing is here's a guy who pleads guilty in June. He's awaiting sentencing and for some reason the sentencing doesn't happen before the October trial. Boytnot testifies at the 214-01 hearing. And it wasn't so much direct terror being terrorized by the prosecutor or threats conveyed. He didn't go there. And you'll occasionally have a case where that's suggested. You didn't see that here. But he did say he was concerned. And if you look at his testimony, they tried to get him to, if you will, flip on Boyt. They tried to get him to testify on Boyt. He wouldn't do it. Wouldn't give them what they wanted to hear. Maybe the prosecution knew what he had to say. But Boyt's counsel couldn't get to him. He's insulated by counsel. They won't talk to him. And what results when they get him to the courtroom in the middle of a trial that counsel's not prepared for, as he stated a few days before at that pretrial, I think it was on the Thursday prior to the Tuesday trial start, I'm not ready. I need a continuance. I have people to interview, things to follow up. Okay. That's the context in which Boytnot is rendered unavailable. And he can't know what Boytnot's going to say. He can only know what White tells him and what he might expect if what he perceives Boytnot would say, if that's honest, if White's statements to his counsel are honest. That's the best he can of knowing. In other words, of discovering that evidence. So we have a situation in which it's rendered unreachable. The phone's another story. He should have asked to see it. Having seen it, he should have asked to play it in court. And there's a different aspect to that. And yet we have this combination of things when we look at the testimony at trial. If you do start adding those up, Lindorfer's admittedly high. She's under pressure from the cops. She's a heroin addict. She gets a considerable amount of consideration. She has reason to make a case for them. And then we have the, if you will, uncontrolled buy. So these are the things which together add up to these facts which, if known by the trial court at the time, would have prevented the judgment. Unless the court has questions. I don't see any. Thank you, Mr. Ruffin. Thank you. The court will take this matter under advisement and be in recess.